FREDERIC H. BRENDLE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

NATHAN BENJAMIN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

HENRY C. HAGEN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

F. SHERMAN CHIPMAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 56394–56397, 66821–66824. Promulgated January 31, 1935.

*Lawrence P. Mattingly, Esq.*, and *Harvey L. Rabbitt, Esq.*, for the petitioners.

*R. W. Wilson, Esq.*, and *Arthur Carnduff, Esq.*, for the respondent.

OPINION.

SEAWELL: Section 22 (c) of the Revenue Act of 1928 provides:

(c) *Inventories.*—Whenever in the opinion of the Commissioner the use of inventories is necessary in order clearly to determine the income of any taxpayer, inventories shall be taken by such taxpayer upon such basis as the Commissioner, with the approval of the Secretary, may prescribe as conforming as nearly as may be to the best accounting practice in the trade or business and as most clearly reflecting the income.

Pursuant to this legislative grant of authority the Commissioner, with the approval of the Secretary of the Treasury, promulgated the following respecting the use of inventories by dealers in securities:

A dealer in securities, who in his books of account regularly inventories unsold securities on hand either—

(a) At cost;

(b) At cost or market, whichever is lower; or

(c) At market value,

may make his return upon the basis upon which his accounts are kept; provided that a description of the method employed shall be included in or attached to the return, that all the securities must be inventoried by the same method, and that such method must be adhered to in subsequent years, unless another be authorized by the Commissioner. For the purpose of this rule a dealer in securities is a merchant of securities, whether an individual, partnership, or corporation, with an established place of business, regularly engaged in the purchase of securities and their resale to customers; that is, one who as a merchant buys securities and sells them to customers with a view to the gains and profits that may be derived therefrom. * * * [Art. 105, Regulations 74.]

The question presented for decision is the narrow one of whether the petitioners were dealers in securities within the meaning of the

quoted regulations. The burden of proof is on the petitioners, which, as we said in *Alfred E. Hamill*, 30 B. T. A. 955, and reiterated in *Albert Fried*, 31 B. T. A. 638, is "undoubtedly heavier than that of overthrowing a purely factual determination upon which the ultimate determination must stand."

The petitioners, operating as brokers on the floor of the exchange, dealt in odd lots of an undisclosed number and kind of stocks, and bought and sold their specialties in round lots for other members of the exchange when the market quotation reached the bid or asking price specified in the order. The income derived by the petitioners from their services was not computed the same way in each of the capacities in which they did business. Due to this fact and other results produced by each class of dealing, the branches of the petitioner's business will be considered separately. .

As odd lot dealers the petitioners were compelled to deal, and always dealt, at a figure from one eighth to one quarter of a point under or above the price fixed by the next sale of a round lot, depending upon whether they were buying or selling. This differential constituted the petitioners' commission for handling or other charge for executing orders received from other brokers on the floor of the exchange. It was the same irrespective of the quotation for the stock being dealt in. To what extent the petitioners were able to match orders each day does not appear. They were compelled by the rules of the exchange to maintain a market, which requirement forced them into short and long positions at times, how often and to what extent as to each kind of stock they specialized in, the record does not disclose. If they anticipated a buying market or a rise in the market, they would buy in round lots to meet the expected demand. The record is silent as to how frequently such buying was done and nothing is contrary to the fact that the petitioners generally relied upon their ability to match orders. The purchase of round lots in expectation of a rise in the market, as distinguished from a purchase to create a stock of securities to take care of future buying orders in excess of selling orders, is not within the activities of a dealer. See *Albert Fried, supra.*

We think these facts demonstrate the difference between the petitioners and a dealer or merchant in securities. A merchant is under no compulsion to buy or sell his wares at any fixed price, irrespective of market conditions, or limit his dealings to certain individuals. Neither does the ordinary merchant have a monopoly in all of the commodities in which he deals. He can advertise and take other measures to promote sales. Such was not the case with the petitioners. They merely remained at one place and took such orders as the market produced without effort on their part.

1192

The other branch of the business of the petitioners was, according to the proof, limited to the purchase and sale, for other members of the exchange, of round lots of the stocks in which they specialized in odd lots, when the market advanced or declined to the figure fixed by the order received for execution. For this service the petitioners were paid 40 percent of the commission received by the broker placing the order. Obviously such methods of earning income did not require the purchase of stock for resale, or involve sales from stocks on hand. There was never any occasion for the petitioners to buy or sell for their own account for any purpose.

We are of the opinion, and so hold, that the petitioners have failed to establish error on the part of the respondent in refusing to classify them as dealers in securities within the meaning of the regulations. See *James B. Lowell*, 30 B. T. A. 1297, and *Albert Fried*, *supra*, in which the same conclusion was reached respecting specialists in stocks listed on the New York Stock Exchange.

· Reviewed by the Board.

*Decision will be entered under Rule 50.*

McMahon dissents.